# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY FORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-3095-B |
| | § | |
| OTIS NORMAN FREEMEN, | § | |
| PRUDENTIAL INSURANCE | § | |
| COMPANY OF AMERICA, and BANK | § | |
| OF AMERICA, N.A., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant Bank of America Corporation's (BoA) Motion to Dismiss (Doc. 32); and (2) Defendant Prudential Insurance Company of America's (Prudential) Motion to Dismiss (Doc. 36). Both Motions were filed under Federal Rule of Civil Procedure 12(b)(6) and seek dismissal of the respective claims brought against BoA and Prudential in Plaintiff's Fourth Amended Complaint (Doc. 26). For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** BoA's Motion to Dismiss (Doc. 32) and **DISMISSES** Plaintiff's state-law negligent-misrepresentation claim as preempted by ERISA. However, the Court **GRANTS** Plaintiff leave to amend his Complaint against BoA and to assert the dismissed state-law claim under ERISA. Furthermore, the Court **GRANTS** Prudential's Motion to Dismiss (Doc. 36) and **DISMISSES with prejudice** Plaintiff's ERISA claim against Prudential.

# I.

## BACKGROUND[1]

### A.  *Factual Background*

This case involves a dispute over Prudential's payment of the life-insurance benefits of David Freemen (hereinafter the "Decedent") to Defendant Otis Norman Freemen.[2] Plaintiff alleges that he was the common-law spouse of the Decedent until the Decedent unfortunately passed away on October 23, 2016. Doc. 26, Pl.'s Fourth Am. Compl. (FAC), ¶ 11. The life-insurance policy (the "Policy") at issue was obtained in 1996 by the Decedent from his employer at the time, MBNA.[3] *Id.* ¶ 12. On December 30, 1996, Plaintiff alleges that the Decedent executed a beneficiary form designating the Plaintiff as the 100% beneficiary on the Policy. *Id.* ¶ 12. The Decedent worked for MBNA until 2005, when he left active employment and was placed on long-term disability. *Id.* ¶ 13.

From 2005 to 2016, Plaintiff alleges that MBNA, BoA, and/or Prudential periodically sent the Decedent information confirming his status, the existence and amount of the Policy, and that Plaintiff was the sole beneficiary. *Id.* ¶ 15. However, Plaintiff does not currently have access to these documents because prior to the Decedent's death, Decedent "cleaned out" these documents, and thus, Plaintiff does not specifically allege which entity purportedly sent these documents. *See id.* After

---

[1] The Court draws its factual history from Plaintiff's Fourth Amended Complaint (Doc. 26). Any contested facts are noted as such.

[2] Freemen does not have a pending motion to dismiss before this Court, thus the claims against him are not addressed in this Order. *See generally* Doc. 30, Freemen's Answer to Fourth Am. Compl.

[3] MBNA is not a party to this case. Instead, Plaintiff brings suit against BoA because he alleges that BoA acquired certain assets and liabilities of MBNA including the duties and obligations of the Policy. Doc. 26, FAC, ¶ 14. BoA does not affirmatively concede nor dispute this allegation. *See, e.g.,* Doc. 33, BoA Mot. to Dismiss, 4. Thus, for purposes of this Order, the Court accepts this allegation as true.

the Decedent's death, Plaintiff contacted Prudential and BoA to make claims for various survivor benefits, including a claim as the beneficiary under the Policy. *Id.* ¶ 16. Prudential told Plaintiff that there was no beneficiary designation on the Policy and advised Plaintiff to contact BoA to obtain the original records of the Policy since BoA had succeeded to MBNA's records. *Id.* ¶ 17.

Plaintiff then called BoA and spoke to a BoA employee, Kecia Atkins, requesting that she check the records to see if she could locate the form naming Plaintiff as the beneficiary on the Policy. *Id.* In response, Atkins allegedly confirmed that she "found [Plaintiff's] name, but could not (and would not) certify that the beneficiary designation applied to the Policy." *Id.* Atkins also allegedly "stated unequivocally that there was no beneficiary form showing [Plaintiff] as beneficiary of the Policy." *Id.* However, in October of 2018, in response to a subpoena Plaintiff served on BoA, BoA turned over records it had regarding the Policy, which allegedly showed Plaintiff as the sole 100% beneficiary of the Policy based on the 1996 designation. *Id.* ¶¶ 27–28.

Relying on the representations BoA made in 2016, Plaintiff proceeded to discuss with Prudential how the Policy proceeds would be paid without a beneficiary designee. *Id.* ¶¶ 17–18. Prudential allegedly stated that the proceeds would go to the Decedent's spouse, and if none existed, to his "heirs." *Id.* ¶ 18. Although Plaintiff alleges that he and the Decedent were common-law married, they never registered their marriage or applied for a marriage certificate after the Supreme Court's decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). *Id.* Thus, Prudential allegedly advised Plaintiff that he would have to make a claim for benefits and prove the elements of common-law marriage in court to obtain the Policy proceeds. *Id.*

Plaintiff then called Freemen expressing his concern that BoA and Prudential did not have record of his beneficiary designation and with having to go through the process of proving his marital

status with the Decedent. *Id.* ¶ 19. Based on this concern, Freemen and Plaintiff allegedly agreed that Plaintiff was entitled to the Policy's proceeds and that instead of going through the "time consuming" process of proving up Plaintiff's marriage, Freemen would accept the proceeds as the Decedent's father and then send the money to Plaintiff. *Id.* Based on this alleged agreement, Plaintiff stopped pursuing his own claim for the funds with Prudential and allowed Freemen to complete the necessary paperwork to pay out the Policy's proceeds. *Id.* ¶ 20. Prudential paid Freemen the Policy proceeds, which at the time totaled $726,299.18. *Id.* ¶ 21. Despite their agreement, Freemen did not pay the Policy proceeds to Plaintiff, but instead allegedly used the money to pay off the title to his house and other third parties. *Id.* ¶ 24.

B.    *Procedural Background*

On February 22, 2017, Plaintiff filed his Original Petition in state court bringing only state-law claims against Freemen based on his breach of the agreement. *See generally* Doc. 1-2, Ex. A-2, Original Pet. After almost two years of litigation in state court, Plaintiff filed a Third Amended Petition, adding state-law claims against Defendants BoA and Prudential. *See generally* Doc. 1-4, Ex. A-49, Third Am. Pet. On November 20, 2018, Defendants removed the state-court action to this Court invoking federal-question jurisdiction. *See* Doc. 1, Notice of Removal. Defendants argued that the Policy at issue was provided under an employee welfare benefit plan controlled by the Employee Retirement Income Security Act (ERISA), and thus, Plaintiff's state-law claims were preempted. *Id.* ¶ 4. Plaintiff did not dispute Defendants' removal on any grounds.

Then, on January 2, 2019, Plaintiff filed his now-operative Fourth Amended Complaint. Doc. 26, FAC. In this Complaint, Plaintiff brings a state-law claim against BoA for negligent misrepresentation based on its allegedly negligent handling of and communications regarding the

Policy documents. *Id.* ¶¶ 43–46. Against Prudential, Plaintiff brings a federal claim under ERISA alleging that he was entitled to the Policy's proceeds, but was denied the proceeds in violation of ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 47–50.

On January 16, 2019, BoA filed its Motion to Dismiss arguing *inter alia* that Plaintiff's state law negligent-misrepresentation claim is preempted by ERISA and that Plaintiff's claim for benefits should otherwise be dismissed with prejudice for failure to exhaust administrative remedies. Doc. 33, BoA Mot. to Dismiss, 4–5, 10–11. Shortly thereafter, on January 22, 2019, Prudential filed its Motion to Dismiss making the same exhaustion argument and arguing that in any case, Prudential appropriately paid Freemen according to the Policy's terms, and thus, cannot be liable under ERISA. Doc. 36, Prudential's Mot. to Dismiss, 5–8. Having been fully briefed on both Motions, the Court now addresses the sufficiency of Plaintiff's claims as to both Defendants.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019)

(emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

## III.

## ANALYSIS

In analyzing these Motions to Dismiss, the Court will first address BoA's argument that Plaintiff's state-law negligent-misrepresentation claim is preempted by ERISA; then second address the sufficiency of Plaintiff's ERISA § 502(a)(1)(B) claim against Prudential; and then finally address the failure-to-exhaust-administrative-remedies argument raised by BoA and Prudential.

A.    *ERISA Preemption*

First, the Court addresses BoA's argument that ERISA preempts Plaintiff's state-law claim for negligent misrepresentation. Doc. 33, BoA's Mot. to Dismiss, 4–10.

"[T]here are two types of preemption under ERISA": complete and conflict. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). Here, it appears to the Court that parts of

BoA's Motion conflates the two types of preemption—*i.e.*, in parts of its Motion to Dismiss it argues that ERISA completely preempts Plaintiff's state-law claim, but simultaneously argues for conflict preemption by citing to ERISA cases dealing with conflict preemption of state-law claims. The scope of complete and conflict preemption under ERISA are very similar but not exactly the same. *See Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 603 (5th Cir. 2006). Because of their differences, and as each appears applicable to this case, the Court considers both preemption types. However, because the parties agree that the Policy is an employee welfare benefit plan governed by ERISA, the Court goes directly into determining whether either type of preemption applies. Then the Court concludes this section with discussing the effect of ERISA preemption on Plaintiff's state-law negligent-misrepresentation claim.

     1.     <u>Complete Preemption</u>

Complete preemption is an exception to the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004). It provides grounds to remove a case from state court—despite the fact that the complaint does not affirmatively allege a federal claim—because Congress may so completely preempt a particular area such that "any civil complaint raising this select group of claims is necessarily federal in character." *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). In other words, complete preemption is not grounds for dismissal, but instead a mechanism to confer federal jurisdiction on a state-law claim that is in fact an ERISA claim. *See Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 779 (S.D. Tex. 2014) (citing *Loffredo v. Daimler AG*, 500 F. App'x 491, 501 (6th Cir. 2012) (Moore, J., concurring in the judgment) ("Complete preemption under § 1132(a) is not grounds for dismissal. . . . If an ostensible state-law

claim is in fact an ERISA claim, it cannot be dismissed as preempted by ERISA; that is, ERISA cannot preempt an ERISA claim.")). Because Plaintiff originally brought his state-law claim against BoA in state court, complete preemption is applicable to this case. *Cf. id.* (finding that because the plaintiff's state-law claims were originally filed in federal court, complete preemption was inapplicable, and instead applying ERISA's conflict-preemption framework).

Complete preemption under ERISA stems from § 502(a), codified at 29 U.S.C. 1132(a), which sets forth a comprehensive civil enforcement scheme. *Davilla*, 542 U.S. at 208. The effect of complete preemption is that "any state-law cause of action that duplicates, supplements, or supplants" this scheme conflicts with the congressional intent to make ERISA an exclusive remedy, "and is therefore pre-empted." *Id.* at 209.

In *Davilla*, the Supreme Court articulated a two-prong test for complete preemption which provides that an individual's cause of action is completely preempted by ERISA: (1) "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and [(2)] . . . there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210. However, because the Supreme Court's complete-preemption framework articulated in *Davilla* was based on ERISA's comprehensive civil-enforcement scheme set forth in ERISA § 502(a), subsequent courts, in analyzing the first prong, have considered whether an individual could bring an ERISA claim under the various other civil-enforcement provisions found in ERISA § 502(a), not just § 502(a)(1)(B). *See, e.g.*, *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 957–58 (W.D. Tex. 2014) (stating that the *Davila* test's first prong requires determining whether a plaintiff could have brought the claim under § 502(a) generally); *Noetzel v. Haw. Med. Serv. Assoc.*, 183 F. Supp. 3d 1094, 1105–07 (D. Haw. 2016) (analyzing the first prong of *Davila* by considering

whether the plaintiff could have brought claims under ERISA § 502(a)(1)(B) or § 502(a)(3)).

Plaintiff does not challenge *Davila*'s first prong—that he could have brought his claims under the civil-enforcement provisions set forth in § 502(a)—and instead, focuses his analysis on arguing that BoA's conduct arises from an "other independent legal duty." *See* Doc. 40, Pl.'s Resp. to BoA's Mot., 3–5. However, as discussed in more detail below, the Court finds that the remedy Plaintiff seeks from BoA could have been brought as a claim under § 502(a)(1)(B) or § 502(a)(3), and thus, the Court considers the more "crucial question . . . [of] whether [Plaintiff] is in fact seeking benefits under the terms of the plan, or rights that derive from" an independent legal duty. *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009).

A legal duty is not independent of ERISA if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Davila*, 542 U.S. at 213. In other words, "[s]tate law legal duties are not independent of ERISA where 'interpretation of the terms of [the] benefit plan forms an essential part' of the claim, and legal liability can exist 'only because of [the defendant's] administration of ERISA-regulated benefit plans." *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 929 (C.D. Cal. 2012) (quoting *Davila*, 542 U.S. at 213).

To summarize, Plaintiff's negligent-misrepresentation claim alleges that BoA was negligent in its handling of the Policy documents—namely, the beneficiary form that the Decedent completed in 1996 listing Plaintiff as the sole beneficiary—and misrepresented to him that there was no beneficiary listed on the Policy. Doc. 26, FAC, ¶¶ 43–45. Plaintiff argues that the "negligence is demonstrated by the production of the beneficiary form in subsequent discovery—which was an obvious part of the MBNA records maintained by Bank of America." Doc. 40, Pl.'s Resp. to BoA's Mot., 2; *see also* Doc. 26, FAC, ¶¶ 27–29, 45. Plaintiff alleges that relying on this misinformation,

he entered into the agreement with Freemen, which ultimately resulted in his inability to recover any of the Policy's proceeds. Doc. 26, FAC, ¶ 46. Plaintiff thus argues that his negligent-misrepresentation claim is not subject to complete preemption because his claim against BoA does not require interpretation of the Plan, and arises from BoA's alleged breach of "an independent legal duty" not to negligently provide false or misleading information in its business. Doc. 40, Pl.'s Resp. to BoA's Mot., 1.

Ultimately, the Court disagrees with Plaintiff and finds that his claim is subject to complete preemption because his attempt to recoup the Policy proceeds based on BoA's false and/or misleading information regarding his coverage status is encompassed within ERISA's civil-enforcement scheme. *See, e.g., Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 451–52 (5th Cir. 2013) (allowing a breach-of-fiduciary-duty claim under ERISA § 502(a)(3) that sought to recover insurance benefits that the plaintiff had lost as a result of his detrimental reliance on the defendants' misrepresentations). Despite being plead in terms of a negligent-misrepresentation claim, Plaintiff's Complaint is seeking to remedy the allegedly wrongful denial of benefits under the ERISA Policy based on BoA's misrepresentations, which resulted in Prudential paying all the Policy's proceeds to Freemen. However, "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).

The Fifth Circuit considered a similar case in *McGowin v. ManPower International, Inc.*, 363 F.3d 556 (5th Cir. 2004). Specifically, in *McGowin*, the Fifth Circuit held that the district court properly found that a plaintiff's state-law claims against her employer for fraud and conspiracy to commit fraud in connection with the refusal to pay her ERISA benefits were completely preempted

by ERISA § 502(a). 363 F.3d at 558–59. In *McGowin*, the plaintiff's theory of recovery argued that her employer "falsely informed her that she was not an employee of [the employer] and was not entitled to its employee benefits." *Id.* at 558. The Fifth Circuit reasoned that a complete preemption finding was proper because "a court could not find fraudulent [employer's] representations that [the plaintiff was] not eligible for benefits without first determining whether the statement is truthful, i.e., without clarifying [the plaintiff's] right to benefits under the plan." *Id.* at 559.

Like the plaintiff in *McGowin*, Plaintiff bases his negligent-misrepresentation claim on BoA allegedly misinforming him that he was not a beneficiary, when he alleges he was. *See* Doc. 26., FAC, ¶¶ 43–44. And Plaintiff is seeking damages—albeit couched in the terms of "reliance damages"—in the amount of the proceeds he was unable to recover under the Policy. *See id.* ¶ 46. Thus, like in *McGowin*, in order to determine whether BoA made negligent misrepresentations, the Court will have to interpret, at least in part, his purported beneficiary status under the Policy. Therefore, Plaintiff may characterize his cause of action as arising under negligent misrepresentation, but he seeks a determination of his eligibility for benefits under an ERISA-governed plan, and he prays for relief specifically provided by § 502(a)(1)(B) or § 502(a)(3). *See McGowin*, 363 F.3d at 559. Thus, the Court finds that complete preemption applies to Plaintiff's negligent-misrepresentation claim.

### 2.    Conflict Preemption

Although the Court finds that complete preemption applies to Plaintiff's state-law claim, the Court will also briefly discuss conflict preemption since it applies as well. Conflict preemption does not provide grounds for removal but instead functions solely as an "affirmative federal defense to a state-law claim." *Westfall v. Bevan*, 2009 WL 111577, at *4 (N.D. Tex. Jan. 15, 2009) (citing *Giles*, 172 F.3d at 337). Conflict preemption under ERISA arises under § 514(a), codified at 29 U.S.C. §

1144(a), which preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." *See* 29 U.S.C. § 1144(a) (emphasis added). In determining whether state-law claims "relate to" a plan, courts examine two factors: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Woods*, 459 F.3d at 602 (citation omitted).

The Court concludes that both factors lean in favor of finding that Plaintiff's negligent-misrepresentation claim is subject to conflict preemption. First, as discussed above, Plaintiff alleges that he is a beneficiary to the ERISA Policy and is seeking to obtain the proceeds he believes he was entitled to based on his beneficiary status. The Fifth Circuit has held that when the "facts underlying a state law claim bear *some* relationship to an employee benefit plan, we evaluate the nexus between ERISA and state law in the framework of ERISA's statutory objectives." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (emphasis in original). And ERISA's "objectives include establishing uniform national safeguards 'with respect to the establishment, operation, and administration of [employee benefit] plans,' and 'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.'" *Id.* (quoting 29 U.S.C. § 1001(a), (b)). Thus, based on these objectives, ERISA provides a comprehensive civil-enforcement scheme, which for example allows a beneficiary to sue to "recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan . . ." ERISA § 502(a)(1)(B); or alternatively, to obtain injunctive or "other appropriate equitable relief" to remedy violations of ERISA or terms of a benefit plan, or to enforce ERISA or terms of a benefit plan. *Id.* § 502(a)(3).

The Court's task in the case will ultimately be to determine whether BoA—as the alleged contract holder of the ERISA Policy and successor to MBNA's duties and obligations—is liable under ERISA for allegedly providing false or misleading information as to Plaintiff's beneficiary status and presumably failing to give the beneficiary form to Prudential. These allegations, although framed in terms of negligent misrepresentation, go to the core of ERISA's safeguarding objectives.

Second, this claim for relief directly affects the relationship between two of the most traditional ERISA entities—a plan sponsor/employer and a beneficiary—which weighs heavily in favor of finding that the claim is subject to conflict preemption. *See Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990) ("Courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party . . . .").

Plaintiff claims he is a Policy beneficiary, which is a traditional ERISA entity. *See* 29 U.S.C. § 1002(8) (defining a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder"). And BoA, as the alleged successor to MBNA—the Decedent's employer that originally established and maintained the Policy—and the contract holder of the Policy could be considered a plan sponsor or a plan fiduciary for purposes of ERISA, and thus, would be another traditional ERISA entity. *See id.* § 1002(16)(B) (defining a plan sponsor to include "the employer in the case of an employee benefit plan established or maintained by a single employer").[4] Plaintiff is thus a beneficiary suing the

_____

[4] Plaintiff disputes whether BoA could be considered a "plan sponsor," *i.e.*, employer, for purposes of ERISA because BoA was never Decedent's employer and discovery has not yet determined how in fact

successor to Decedents' employer and plan sponsor in an attempt to recoup life-insurance proceeds he believes he was wrongfully denied. Therefore, the outcome of Plaintiff's claim for negligent misrepresentation would affect the relationship between Plaintiff and BoA because "a ruling favorable to either will determine the obligations of each *vis a vis* the other." *See Armstrong v. Colombia/HCA Healthcare Corp.*, 122 F. Supp. 2d 739, 745 (S.D. Tex. 2000) (finding that a decedent's spouse's state-law claims, including a negligent-misrepresentation claim, against her former employer and life-insurance issuer were subject to conflict preemption because the spouse was in essence seeking life-insurance benefits she believed she was improperly denied).

In reaching this determination, the Court finds that the various cases Plaintiff cites to support his position are not applicable to this case. *See* Doc. 40, Pl.'s Resp. to BoA's Mot., 7–9. In fact, the cases cited by Plaintiff are distinguishable and refute his own argument. Specifically, the cases Plaintiff cites in which courts found that ERISA preemption did not apply either: (1) involved at least one nontraditional ERISA entity—*e.g.*, a third-party medical service provider—and/or (2) involved duties and obligations based on separate oral or written contractual obligations between the parties and were not solely based on the interpretation and coverage of the ERISA plan at issue. *See,*

---

BoA succeeded to the duties and obligations of MBNA. Doc. 40, Pl.'s Resp. to BoA's Mot., 8–9. Plaintiff instead argues that BoA is more like a "custodian of records" because of its role as the "contract holder" of the Policy. *Id.* at 9. The Court agrees that this issue is slightly complicated by the fact that BoA was never actually the Decedent's traditional employer and that discovery on this issue has not been fully developed. However, BoA argues that based on Plaintiff's allegations, BoA—as a successor to MBNA who was the plan sponsor and fiduciary—could be considered a traditional ERISA entity. Doc. 33, BoA's Mot. to Dismiss, 6–7; *see also* Doc. 48, BoA's Reply, 1. Moreover, the Court finds that based on the allegations, even if BoA is not a plan sponsor, BoA may arguably be considered a fiduciary subject to liability under ERISA. *See* 29 U.S.C. § 1002(21) (providing the definition of fiduciary); *see also Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002) ("The term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA."). Ultimately, in light of the additional factors favoring a finding of both complete and conflict preemption discussed in this Order, the Court need not definitively determine BoA's ERISA-entity status, and thus, does not find this dispute material to the Court's analysis.

*e.g.*, *Lone Star OB/GYN Assocs.*, 579 F.3d at 530–31 (finding that ERISA preemption did not apply to plaintiff's state-law claim because it "implicate[d] the rate of payment as set out in the Provider Agreement, rather than the right to payment under the terms of the benefit plan"); *UnitedHealthcare Servs., Inc. v. Next Health, LLC*, 2018 WL 3520429, at *3–4 (N.D. Tex. July 20, 2018) (finding no conflict preemption in part because the defendants were medical service providers, which the district court held were "not traditional ERISA entities"); *Aetna Life Ins. Co. v. Humble Surgical Hosp. LLC*, 2016 WL 7496743, at *2–3 (S.D. Tex. Dec. 31, 2016) (holding ERISA was "silent about overpayment by an insurer to a provider" and thus, conflict preemption did not apply). As discussed above, the Court does not find that either is the case here. Thus, the Court concludes that ERISA's conflict-preemption framework also preempts Plaintiff's negligent-misrepresentation claim.

### 3. Repleading Under ERISA

Though the Fifth Circuit has not clearly indicated "the appropriate course of action for claims found to be completely preempted," it has outlined two possible approaches:

> District courts in this circuit are split. Most hold that complete preemption results in dismissal of the state-law claim, even though they typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims. Defendants, as well as the Second Circuit, urge this approach. But at least one of our district courts does not dismiss the claim, instead treating it as having become a properly asserted federal claim and proceeding to adjudicate it on the merits.

*Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 n.62 (5th Cir. 2015) (cleaned up) (collecting cases). And courts in this circuit appear to be leaning toward the dismissal approach. *Id.* ("[O]ur decision in *GlobeRanger* appears to provide support for the dismissal approach." (citing *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012))). In this case, the Court views the dismissal approach as the better option because both complete and conflict preemption apply to

bar Plaintiff's state-law negligent-misrepresentation claim. Thus, Plaintiff may elect to refile his claim under § 502(a)(1)(B) or another one of ERISA civil-enforcement provisions, such as § 502(a)(3).[5] Therefore, Plaintiff's state-law claim for negligent misrepresentation against BoA is **DISMISSED**; however, as explained below the Court **GRANTS** Plaintiff leave to amend his Complaint to replead and assert this claim under ERISA.

B.     *Sufficiency of Plaintiff's ERISA § 502(a)(1)(B) Claim Against Prudential*

Next, the Court addresses the sufficiency of Plaintiff's ERISA § 502(a)(1)(B) claim against Prudential. Doc. 26, FAC, ¶¶ 47–50. Plaintiff argues that Prudential violated § 502(a)(1)(B) by denying his post-suit claim for benefits he made to Prudential despite the fact that he was noted as the beneficiary on the beneficiary designation form completed by the Decedent in 1996. *Id.* ¶¶ 47–48. Prudential argues that Plaintiff's claim fails because in paying the life-insurance proceeds to Freemen, it complied with the terms of the ERISA-governed plan and otherwise made the payment in good faith. Doc. 36, Prudential's Mot. to Dismiss, 1, 7–9.

"ERISA requires '[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), 'specify[ing] the basis on which payments are made to and from the plan,' § 1102(b)(4)." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (internal citations included, alterations in original). "The plan administrator is

_____

[5] However, the Court cautions Plaintiff that he cannot pursue an action under both § 502(a)(1)(B) and § 502(a)(3) simultaneously, unless each claim is based on distinct injuries. *See Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 866 (5th Cir. 2018) ("A claimant whose *injury* creates a cause of action under ERISA § 502(a)(1)(B) may not proceed with a claim under ERISA § 502(a)(3).") (alterations incorporated, quotations omitted). The Fifth Circuit directs district courts to look at the underlying injury to determine whether a given claim is duplicative of a claim that could have been brought under § 502(a)(1). *Id.* Therefore, to bring more than one ERISA claim, Plaintiff will need to allege distinct injuries arising under each separate claim.

obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA],' § 1104(a)(1)(D), and ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* (alterations in original). Therefore, based on this directive, § 502(a)(1)(B) provides for a private cause of action by a "participant or beneficiary" "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

"[Plaintiff's] claim therefore stands or falls by 'the terms of the plan[.]'" *Kennedy*, 555 U.S. at 300 (citing 29 U.S.C. § 1132(a)(1)(B)). And Prudential argues that "applying the plan documents rule, Prudential did exactly what § 1104(a)(1)(D) requires—it applied the terms of the Plan and paid [Freemen] 'in accordance with the documents and instruments governing the plan.'" Doc. 36, Prudential's Mot. to Dismiss, 8. Therefore, the Court will first look at the relevant Policy terms and then determine whether Prudential acted in accordance with those terms.

As relevant to this issue, the Policy[6] defines a "Beneficiary" as "a person chosen, on a form

---

[6] The Court may properly consider the Policy in ruling on this Motion to Dismiss because the Policy was referenced in Plaintiff's Complaint, is central to Plaintiff's ERISA claim, and was attached by Prudential to its Motion to Dismiss. *See Ironshore Europe DAC*, 912 F.3d at 763. However, Plaintiff disputes whether the policy Prudential attached to its Motion is applicable to this case because the document is allegedly dated 1998 and the Decedent acquired his Policy in 1996. Doc. 44, Pl.'s Resp. to Prudential's Mot., 3. Prudential concedes that it mistakenly attached the incorrect policy to its Motion; however, it did attach the relevant provisions from the 2001 policy that it argues would control the payment of proceeds in this case since the Decedent's date of disability was February 4, 2005. Doc. 51, Prudential's Reply, 8–9; *see generally* Doc. 51-1, Ex. A (2001 policy). The Court agrees that the relevant language necessary to rule on this Motion is the same in both policies. *Compare* Doc. 37-2, Prudential's App., 44 (2006 policy) *with* Doc. 51-1, Ex. A, 4 (2001 policy). Moreover, Plaintiff uses policy language from the attached policies to support his argument that Prudential violated ERISA. Doc. 44, Pl.'s Resp. to Prudential's Mot., 10–11. Therefore, the Court considers the relevant policy language as stated in the documents attached to Prudential's Reply to determine whether Prudential complied with the Policy's terms.

approved by Prudential, to receive the insurance benefits." Doc. 51-1, Ex. A, 4 (Beneficiary Rules).

With regards to distribution of the Policy's benefits, the Policy states that:

> If there is a Beneficiary for the insurance, it is payable to that Beneficiary. Any amount of insurance for which there is no Beneficiary at your death will be payable to the first of the following: Your (a) surviving spouse; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate.

*Id.* And lastly, with regards to changing the beneficiary status, the Policy states that:

> You may change the Beneficiary at any time without the consent of the present Beneficiary. The Beneficiary change form must be filed through the Contract Holder. The change will take effect on the date the form is signed. But it will not apply to any amount paid by Prudential before it receives the form.

*Id.* As previously stated, the Policy names MBNA as the "Contract Holder," which is now allegedly BoA based on its acquisition of MBNA. *See id.* at 3.

Prudential thus argues that it acted in accordance with the terms of the Policy when it paid the Policy proceeds to Freemen because: (1) at that time it was not aware of the beneficiary designation form naming Plaintiff nor did it have the form in its possession; (2) Plaintiff never filed a claim as a surviving spouse (which Plaintiff concedes); and (3) Prudential acted in good faith because it was not aware of any competing claim. Doc. 36, Prudential's Mot. to Dismiss, 7–9. In response, Plaintiff argues that: (1) Prudential did not act in accordance with the terms of the Policy because there was no explicit requirement that the Decedent was required to send the 1996 original beneficiary designation form to Prudential, but only that he file it with the contract holder, which he did; and (2) Prudential's argument that it paid out the proceeds in good faith requires more evidence and is improper to determine at the motion-to-dismiss stage because Prudential did not contact BoA to determine what forms it had in its possession. Doc. 44, Pl.'s Resp. to Prudential's

Mot., 7–11. The Court addresses Plaintiff's arguments, but concludes that the allegations in Plaintiff's Complaint are insufficient to state an ERISA § 502(a)(1)(B) claim against Prudential.

The Court finds that Prudential acted in accordance with the plan documents based on the information it had at the time when it paid out the Policy proceeds. First, there are no allegations in the Complaint that Prudential was aware there was a beneficiary designation form at the time it paid out the proceeds. Plaintiff alleges that when he first contacted Prudential, it told him that it did not have a beneficiary form on file for the Policy. Doc. 26, FAC, ¶ 17. In fact, Plaintiff acknowledges that even after subpoenaing Prudential's records there was no beneficiary designation form found in Prudential's records. *Id.* ¶ 26. And Plaintiff further acknowledges that after speaking to BoA and being told there was no beneficiary designee on the Policy, he called Prudential back and asked what would happen with the Policy's proceeds absent a designee. *Id.* ¶ 18. Therefore, both Prudential and Plaintiff were operating under the belief that there was no beneficiary designation form. Thus, absent a beneficiary designee or a claim for benefits made by the Decedent's spouse or children, the Policy's language clearly directs Prudential to pay out the Policy proceeds to the Decedent's surviving parent(s), which is what it did when it made the payment to Freemen. *See* Doc. 51-1, Ex. A, 4.

In reaching this conclusion, the Court is not persuaded by Plaintiff's argument that "[t]here is no evidence of any requirement [in the Policy] that the Decedent is required to send the form directly to Prudential[,]" and thus, by "[h]aving completed the form, and delivering it to the 'Contract Holder,' Prudential was required to pay Policy proceeds according to the beneficiary form in the hands of the Contract Holder." Doc. 44, Pl.'s Resp. to Prudential's Mot., 9. In essence, Plaintiff argues that the Policy "suggests that Prudential had a duty to inquire further about the plan documents and forms in the possession of its designated 'contract holder.'" *Id.* at 10. However, no

where in Plaintiff's Complaint does he allege that Prudential did not contact BoA or base Prudential's purported § 502(a)(1)(B) liability on these arguments.

Even assuming the Policy did not require that Prudential receive the beneficiary designation form for it to be effective,[7] and assuming that Prudential did not contact BoA, the Fifth Circuit has held that in the ERISA context "[t]here is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–19 (2008)). Here, Prudential had asked Plaintiff to contact BoA and inquire whether there was a beneficiary designee. Plaintiff did so, and BoA told Plaintiff there was no beneficiary. Then, Plaintiff once again contacted Prudential, this time asking what would happen with the proceeds absent a beneficiary designee. And based on the information Prudential gave him, Plaintiff chose to not make a claim as the Decedent's spouse and allowed Freemen to receive the proceeds. Thus, the Court does not find that Prudential's alleged failure to contact BoA can give rise to liability under § 502(a)(1)(B) when at the time the proceeds were paid out there was no disputed

---

[7] The Policy states that "[a change in beneficiary] will not apply to any amount paid by Prudential before it receives the form." Doc. 51-1, Ex. A, 4. Prudential argues that this language means that because it is undisputed that Prudential did not have the beneficiary designation form when it paid out the benefits to Freemen, the discovery of the form roughly two years later cannot apply to the amount it already paid out. Doc. 36, Prudential's Mot. to Dismiss, 8–9. In response, Plaintiff argues that this language only applies to a "change of beneficiary form" and the beneficiary designation form at issue in this case was not a change, but the initial beneficiary designation made in 1996 when the Decedent acquired the Policy. Doc. 44, Pl.'s Resp. to Prudential's Mot., 10. Thus, Plaintiff argues that the beneficiary designation was effective as soon as the Decedent filed it with his employer and "contract holder" at the time, MBNA. *Id.* at 10–11. The Court need not resolve this issue because even assuming Plaintiff's interpretation is correct the fact remains that there are no allegations in the Complaint that Prudential was aware of the beneficiary designation form or that it had an affirmative duty to go searching for one.

claim and the contract holder, BoA, had already told Plaintiff there was no beneficiary designee.

In a case involving similar facts from the Eighth Circuit, the court found that a life insurance company properly paid out the death benefits according to a 1991 designation even though the life insurance company was aware that there was a later designation, was "on notice of 'a legitimate dispute between the beneficiaries,'" and failed to warn the plaintiffs that it would pay in accordance with the 1991 designation before doing so. *Matschiner v. Hartford Life Ins. Co.*, 622 F.3d 885, 888–89 (8th Cir. 2010). The court held in this manner because the record was clear that although the life insurance company asked the plaintiffs for the later designation, it was never provided to the life insurance company, and thus it properly paid out the benefits in accordance with the plan documents and the beneficiary designation it had on file at the time. *Id.* at 889 (applying the plan-documents rule set out in *Kennedy*, 555 U.S. at 288).

Although *Matschiner* was decided at summary judgment, the Court still finds it persuasive since the allegations in Plaintiff's Complaint establish that like the life insurance company in *Matschiner*, Prudential cannot be found liable under § 502(a)(1)(B): Prudential told Plaintiff that he would need to contact BoA and acquire the beneficiary designation form; Plaintiff never produced the form nor was it found in Prudential's records; and Prudential advised Plaintiff how the Policy's proceeds would be paid out absent a designee. As discussed in more detail below, Plaintiff chose not to pursue a claim for benefits under the Policy with Prudential, but instead entered into an agreement with Freemen where he would receive the Policy's proceeds and then give the proceeds to Plaintiff. In Plaintiff choosing this path, Prudential did what it was required to do under the Policy—and what Plaintiff expected them to do—it paid the Policy's proceeds to Freemen since there was no beneficiary designee and no claim by the Decedent's spouse or children. Therefore, Plaintiff's

Complaint has failed to allege a § 502(a)(1)(B) claim against Prudential.

C.    *Failure to Exhaust Administrative Remedies*

Finally, the Court takes up BoA and Prudential's argument that Plaintiff's claim for benefits should be dismissed because he failed to exhaust administrative remedies provided for in the Policy. Doc. 33, BoA's Mot. to Dismiss, 10–11; Doc. 36, Prudential's Mot. to Dismiss, 5–6. First the Court will address BoA' exhaustion argument, followed by Prudential's.

1.    BoA's Exhaustion Argument

To start, the Court notes that Plaintiff does not currently have any ERISA claims against BoA, yet BoA still makes the argument that failure to exhaust plan remedies bars Plaintiff's ERISA claims. Thus, at first glance, ruling on this issue seems premature. In response, Plaintiff argues that BoA's failure-to-exhaust-administrative-remedies argument is misplaced because BoA has failed to show that the Policy required him to make a claim with BoA, as apposed to the plan-administrator, Prudential. Doc. 40, Pl.'s Resp. to BoA's Mot., 10. In its Reply, BoA does not respond to this argument or make additional exhaustion arguments.

"Generally, the Fifth Circuit requires that 'claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 303 (S.D. Tex. 2011) (quoting *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000)). "Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense." *Id.* (quoting *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010)). And "a complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.* at

304 (citing *Am. Surgical Assistants*, 2010 WL 565283, at *2); *see also Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct. 30, 2008) ("The proper procedural vehicle for assertion of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly supported motion for summary judgment."). Therefore, the Court does not find it appropriate to dismiss Plaintiff's claims against BoA for failure to allege exhaustion of administrative remedies at the motion-to-dismiss stage.

Even if exhaustion was appropriate to address at this stage, Plaintiff has pled facts indicating that an exception to the exhaustion requirement may apply. In *Bourgeois v. Pension Plan for Employees of Santa Fe International Corporations*, the Fifth Circuit addressed various possible exceptions to ERISA's exhaustion requirement, some of which may be applicable to this case. *See* 215 F.3d at 479–82. One example of an exception that may apply is based on a quasi-estoppel theory.[8] The Court stated that prior Fifth Circuit precedent "support[ed] the proposition that a court should not relinquish its jurisdiction because of a failure to exhaust administrative remedies when there was a valid reason for such failure." *Id.* at 481 (citing *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997)). An example of when there would be a valid reason for such failure would be when "a claimant relies to his detriment on the words and actions of high-ranking company officers who

---

[8] Another example of an exhaustion exception the court stated in *Bourgeois* was that prior Fifth Circuit dicta may allow for an exception to the exhaustion requirement if a plaintiff could show "that the lack of information [provided by the defendant] harmed him or precluded him from pursuing his administrative remedies." 215 F.3d at 480–81 (citing *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990)); *see also Meza*, 908 F.2d at 1279 (citing *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990) (holding that a plan administrator's refusal to provide plan documents denied claimant meaningful access to administrative remedies and excused claimant from exhaustion requirement)). The Court notes this and other exceptions for the sole purpose of highlighting why a Rule 12(b)(6) dismissal on exhaustion grounds as to BoA is improper, and why more discovery and summary-judgment type evidence is needed to ultimately determine this issue. The Court does not make a determination that any of these exceptions in fact apply.

purport to negotiate benefit decisions without actual authority." *Id.* at 481–82, 481 n.26 (citing *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113, 121 (3d Cir. 1988)).

In this case, Plaintiff's claim is based on the alleged misrepresentations made by a BoA employee, Kecia Atkins, stating that there was no beneficiary designation on the Policy. Doc. 26, FAC, ¶ 17. And Plaintiff relied on this information when he decided to enter an agreement with Freemen in lieu of making a claim for benefits with Prudential. *Id.* ¶ 19. Although discovery will be needed to determine the applicability of this and other potential exceptions to the exhaustion requirement, the Court finds that the allegations in Plaintiff's Complaint and the unique circumstances of this case are sufficient to infer that an exception to exhausting administrative remedies may be appropriate in this case. Thus, the Court declines to dismiss Plaintiff's claims against BoA on exhaustion grounds.

### 2.  Prudential's Exhaustion Argument

Prudential also argues that Plaintiff's ERISA claim fails because he failed to exhausted administrative remedies. Doc. 36, Prudential's Mot. to Dismiss, 5–6. Plaintiff concedes that although granting a motion to dismiss for failure to exhaust administrative remedies is generally disfavored, "[i]f failure to exhaust administrative remedies is apparent from the face of the complaint . . . a Rule 12(b)(6) motion is the proper vehicle." Doc. 44, Pl.'s Resp. to Prudential's Mot., 4 (citing *Jefferson v. Loftin*, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005)); *see also Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 30, 33 (5th Cir. 1993) (affirming the district court's Rule 12(b)(6) dismissal on exhaustion grounds when the plaintiff made her first claim for benefits by filing suit). Plaintiff alleges that because Prudential and BoA told him there was no beneficiary form he "stopped pursuing his own claim to the funds." Doc. 26, FAC, ¶ 20. Thus, Plaintiff concedes that at the time Prudential

paid the Policy's proceeds, Plaintiff had not submitted a claim for benefits—in fact, he chose not to.

Instead, Plaintiff made a claim with Prudential roughly two years later when he discovered BoA had the beneficiary form; however, this was after Prudential had already paid the Policy's proceeds to Freemen and after Plaintiff filed his suit in state court. *See id.* ¶ 30. Plaintiff argues that his post-lawsuit claim for benefits satisfies the exhaustion requirement because Prudential failed to respond on time, a violation of its own procedures. *Id.*; Doc. 44, Pl.'s Resp. to Prudential's Mot., 5–6. However, the Fifth Circuit has found that absent an applicable exception, allowing a plaintiff to make his initial claim for benefits in a lawsuit undermines the policy considerations underlying the exhaustion requirement. *See Meza*, 908 F.2d at 1279 (quoting *Denton v. First Nat'l Bank of Waco, Tex.*, 765 F.2d 1295, 1300 (5th Cir. 1985) ("The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.")). Plaintiff has not shown and the Court does not find any case law to support considering Plaintiff's post-lawsuit claim for benefits sufficient to satisfy the exhaustion requirement.

Plaintiff also argues that the exhaustion requirement on his claim against Prudential should be excused because exhausting administrative remedies in this case would be futile. Doc. 44, Pl.'s Resp. to Prudential's Mot., 5–6. Plaintiff argues that futility is met "if the plan administrator has indicated in the course of the litigation that it intends to refuse any further claim by Plaintiff, or that it has a longstanding policy concerning denial of certain types of claims." *Id.* at 5 (quoting *Gastwirth v. Cigna Grp. Ins.*, 1998 WL 874879, at *3 (N.D. Tex. Nov. 25, 1998) (citing *DePina v. Gen.*

*Dynamics Corp.*, 674 F. Supp. 46, 50–51 (D. Mass. 1987))). However, Plaintiff omits that the Fifth Circuit has also held that "failure to show hostility or bias on the part of the [plan administrator] is fatal to a claim of futility." *McGowin*, 363 F.3d at 559. Plaintiff nevertheless argues that this exception is met because Prudential's position in this lawsuit is that because it paid out the Policy's proceeds to Freemen, Prudential no longer has an obligation to pay the correct beneficiary. Doc. 44, Pl.'s Resp. to Prudential's Mot., 6.

Plaintiff however misinterprets this exception. Based on the allegations in Plaintiff's Complaint, Prudential's position as to who is entitled to the Policy's proceeds has remained the same from the time Plaintiff called Prudential following the Decedent's death to present day—absent a beneficiary designee, the Policy's proceeds would be paid out to the Decedent's spouse, and if none, to the Decedent's heirs. *See* Doc. 26, FAC, ¶ 18. Prudential's current position is not that it would have refused any claim by Plaintiff, but that the time to make a claim was when it originally advised Plaintiff of the proper claim process after the Decedent's death and prior to filing suit.

Furthermore, Plaintiff has failed to allege any hostility or bias on Prudential's part. For example, Plaintiff has not alleged that Prudential's policy was to consider only heterosexual spouses as beneficiaries under the Policy or that even if Plaintiff proved up his common-law marriage Prudential would not have consider him a spouse subject to beneficiary status. In fact, Plaintiff alleges that Prudential advised him that he would need to prove up his marriage status to take under the Policy. Although Plaintiff has arguably alleged bias and/or hostility as to BoA's employee, *see* Doc. 26, FAC, ¶ 29 (alleging that once he told BoA's employee that he was Decedent's spouse she "became less than helpful"), there are no allegations that Prudential was hostile or biased against Plaintiff's attempt to collect the Policy's proceeds.

To be clear, although the Court finds that Plaintiff potentially has an exception to exhausting administrative remedies with respect to ERISA claims against BoA—and thus, Rule 12(b)(6) dismissal is improper as to BoA's claims—the Court does not find that the same reasoning applies to Prudential. This is because Plaintiff admits in his Complaint that even after subpoenaing Prudential's records, "it appeared that Prudential did not have copies of the beneficiary designation." *Id.* ¶ 26. Thus, unlike BoA—who allegedly had the form in it possession, but failed to produce it when requested—Prudential was appropriately operating under the belief that there was no beneficiary designation form. And while operating under that belief, Prudential advised Plaintiff that according to the Policy's terms, absent a beneficiary designee, the Policy's proceeds would be paid out to the Decedent's spouse, and if none, to Decedent's heirs. *Id.* ¶ 18. Prudential also advised Plaintiff that as Decedent's common-law spouse he would have to make a claim and prove up the elements of common-law marriage to seek benefits under the Policy. *Id.*

Thus, the allegations in the Complaint show that Prudential properly advised Plaintiff of his rights under the Policy based on the information known to it at the time. In other words, Plaintiff has not alleged any failure on the part of Prudential to provide him with plan information or how any of its actions prejudiced his ability to obtain the Policy's proceeds. *See Meza*, 908 F.2d at 1279 (citing *Curry*, 891 F.2d at 846). Although the Court recognizes that the claim process Prudential outlined would likely take significant time and effort, the fact remains that Plaintiff chose to "stop[] pursuing his own claim to the funds," and thus on the face of the Complaint it is clear that Plaintiff failed to exhaust his administrative remedies prior to filing suit. *See* Doc. 26, FAC, ¶ 20.

## IV.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS in part** and **DENIES in part** BoA's Motion to Dismiss (Doc. 32) and **GRANTS** Prudential's Motion to Dismiss (Doc. 36). Specifically, as to BoA's Motion, the Court **DENIES** the Motion as to its exhaustion argument, but **GRANTS** the Motion as to its preemption argument, and therefore, **DISMISSES** Plaintiff's state-law negligent-misrepresentation claim as preempted by ERISA. However, the Court **GRANTS** Plaintiff leave to amend his Complaint to assert the dismissed state-law claim under ERISA and in a manner consistent with this Order. Plaintiff must file an amended complaint within **thirty days** of this Order.

As to Prudential's Motion, the Court **GRANTS** its Motion and finds that the allegations in Plaintiff's Complaint fail to state a claim under ERISA § 502(a)(1)(B) because the Complaint shows that Prudential paid the Policy proceeds according to the Policy's terms and Plaintiff failed to exhaust his administrative remedies prior to filing suit. The Court finds that allowing Plaintiff the opportunity to replead against Prudential would be futile because Plaintiff would in essence have to contradict many of the allegations and arguments he currently asserts against Prudential in order to state a viable § 502(a)(1)(B) claim. Therefore, the Court **DISMISSES with prejudice** Plaintiff's § 502(a)(1)(B) claim against Prudential. As this is the only remaining claim against Prudential, the Clerk of Court is directed to terminate Prudential from this case.

SO **ORDERED.**

**SIGNED:** May 21, 2019.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE