IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY FORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-3095-B |
| | § | |
| OTIS NORMAN FREEMEN, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rodney Ford has filed a motion for summary judgment against Defendant Otis Norman Freemen, *see* Dkt. No. 65, which United States District Judge Jane J. Boyle has referred to the undersigned United States magistrate judge for hearing, if necessary, and recommendation or determination, *see* Dkt. No. 75. Defendant has not filed a response, and the time to do so has passed.

For the following reasons, the undersigned recommends that the motion for summary judgment be granted in part and that the Court defer ruling on the request for attorneys' fees and allow Plaintiff's counsel to supplement his motion for summary judgment and summary judgment evidence concerning attorneys' fees.

**Background**

Plaintiff was the common law, same sex spouse of Norman David Freemen ("David"). Plaintiff and David cohabitated for 24 years and held themselves out to the public as spouses, including making a claim for spousal benefits on the death of David's

stepmother. *See* Dkt. No. 69 at 4, 29-30, 33.

Defendant is David's father. *See* Dkt. No. 69 at 4.

David died on October 23, 2016. *See id.* at 4, 9.

Plaintiff is the executor/independent administrator and sole beneficiary under David's Last Will and Testament. *See id.* at 5, 10-16. The Probate Court approved the Inventory, Appraisement and List of Claims and recognized the community property interests of Plaintiff and David as spouses. *See id.* at 20-25.

Plaintiff is also the sole beneficiary of a Prudential life insurance policy, which was procured as a benefit of David's employment with MBNA. *See id.* at 5, 26. At the time of David's death, the policy payout amount was $726,200. *See id.* at 5, 76.

After David's death, Plaintiff called Prudential to make a claim under the policy. *See id.* at 9. Prudential informed him that it could not locate the beneficiary designation for the insurance policy or otherwise verify that Plaintiff was the beneficiary. *See id.* Because Plaintiff could not locate David's copy of the policy, Prudential suggested that Plaintiff contact MNBA's successor, Bank of America, which had MBNA's records. *See id.*

In November 2016, Plaintiff spoke with Bank of America representative Keisha Atkins and identified himself as David's spouse. Ms. Atkins told him she found David's employment records on microfiche, but the records did not show him as David's beneficiary. *See id.*

Plaintiff called Prudential and advised its representative of what he had been

told by Bank of America. Prudential advised Plaintiff that if no beneficiary form could be found, the policy proceeds would be paid to David's spouse or next of kin. *See id.*

Thereafter, Plaintiff called Defendant and told him about the conversations with Prudential and Bank of America in which he was told that he must prove his claim as David's common law spouse because he did not have the beneficiary designation form. *See id.* at 5-6.

Defendant offered to claim the insurance policy proceeds as David's heir and next of kin and then pay those proceeds to Plaintiff. *See id.* at 10, 37-38, 40. Plaintiff accepted Defendant's offer and, in reliance on their agreement, did not pursue his claim with Prudential. *See id.* at 6.

Both parties were concerned about potential tax consequences. Plaintiff consulted the IRS and told Defendant what he learned. He also told Defendant that a portion of the proceeds could be used by either party if taxes were incurred as a result of the verbal agreement. *See id.* at 6.

Plaintiff completed most of the paperwork for Defendant to submit a claim on the insurance policy. *See id.* Defendant then submitted a claim for the policy proceeds as David's next of kin, and Prudential paid Defendant the sum of $726,299.18. *See id.* at 38, 42-43.

On December 3, 2016, Defendant wrote, signed, and mailed a check to Plaintiff. The check was made payable to Plaintiff, in the amount of $726,299.18 and had the notation "For David Freemen." *Id.* at 17-19, 38, 40.

Sometime later in December 2016, Defendant called Plaintiff and told him not to cash the check. Although Plaintiff had consulted the IRS about possible tax consequences shortly after the parties reached the agreement, Defendant stated that he wanted to find out more about the tax situation before Plaintiff cashed the check. Defendant asked Plaintiff to tear up the check and said that he would send a new check soon. Plaintiff did not tear up the check, and he did not receive a new check from Defendant. On December 16, 2016, Defendant called Plaintiff and said he was keeping all the money, then hung up. *See id.* at 42.

Defendant stopped payment on the check. *See id.* at 40-41. Plaintiff presented the check to the bank for deposit. The check was returned with a notion of "stop payment" on it. *See id.* at 6.

In September and October of 2017, Defendant used $330,000 of the insurance proceeds to purchase a house located at 2016 Wickersham Drive, Huntsville, Texas. *See id.* at 7, 43-44. In 2019, the house had an appraised value of $336,650. *See id.* Defendant also used the insurance proceeds for dental, medical, and legal expenses. *See id.* at 43. In his deposition, Defendant testified that he still has about $200,000 of the insurance proceeds. *See id.* at 43.

In his live pleading, Plaintiff brings claims against Defendant for suit on the instrument, breach of contract, and money had and received/unjust enrichment. He seeks actual damages, attorneys' fees, and the imposition of a constructive trust over all property that can be traced back to the insurance proceeds, including Defendant's

house. *See* Dkt. No. 55.

During discovery, Bank of America located the beneficiary form in old MBNA files. On the beneficiary form, David designated Plaintiff as the sole beneficiary of the Prudential life insurance policy. *See id.* at 7, 73-74.

After the motion for summary judgment was filed, Defendant's counsel was allowed to withdraw, and Defendant now represents himself. Defendant did not file a response to the motion for summary judgment.

The undersigned now concludes that Plaintiff's summary judgment motion should be granted, except for the request for attorneys' fees.

### Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving

party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).
"A party asserting that a fact cannot be or is genuinely disputed must support the
assertion by: (A) citing to particular parts of materials in the record, including
depositions, documents, electronically stored information, affidavits or declarations,
stipulations (including those made for purposes of the motion only), admissions,
interrogatory answers, or other materials; or (B) showing that the materials cited do not
establish the absence or presence of a genuine dispute, or that an adverse party cannot
produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary
judgment must be granted against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's case, and on which it will
bear the burden of proof at trial. If the moving party fails to meet this initial burden,
the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl.,
L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks
and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth"
– and submit evidence of – "specific facts showing a genuine issue for trial and not rest
upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at
625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord
Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the
pleadings alone" but rather "must go beyond the pleadings and designate specific facts
showing that there is a genuine issue for trial." (internal quotation marks and footnotes

omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule

56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.

1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

Defendant has not responded to Plaintiff's motion for summary judgment. Defendant's failure to respond does not permit the Court to enter a "default" summary judgment. But the Court is permitted to accept Plaintiff's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). And Defendant's failure to respond means that he has not designated specific facts showing that there is a genuine issue for trial on any of his claims. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). The fact that Defendant is litigating this case *pro se* does not alter this rule, because

> [t]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require pro se parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat

less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.

*Bookman*, 945 F. Supp. at 1005; *accord Johnson v. Herzog Transit Servs., Inc.*, No. 3:11-cv-803-D, 2013 WL 164222, at *1-*2 (N.D. Tex. Jan. 15, 2013).

## Analysis

I.    <u>The Court should grant summary judgment on the breach of contract claim.</u>

Plaintiff seeks summary judgment on his claim to enforce the dishonored check. He alleges that Defendant breached a negotiable instrument and a verbal contract.

A.    <u>Plaintiff is entitled to bring a suit on the instrument to enforce the check.</u>

The Texas Business and Commerce Code provides that, if a check is dishonored, the payee may enforce either the check or the underlying obligation. *See* TEX. BUS. & COM. CODE § 3.301(b); *Probus Props. v. Kirby*, 200 S.W.3d 258, 262 (Tex. App. – Dallas 2006, pet. denied). Plaintiff elects to enforce the instrument – the check.

B.    <u>Defendant breached both contracts by dishonoring the check.</u>

A check is a valid contract. "It is settled law that a check – as a type of negotiable instrument – is a formal contract." *½ Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 383 (Tex. 2011). "A negotiable instrument is an 'unconditional promise or order to pay a fixed amount of money,' TEX. BUS. & COM. CODE § 3.014(a), a definition that fits squarely within the meaning of a contract as 'a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in someway recognizes as a duty,' *see* RESTATEMENT (SECOND) OF CONTRACTS § 1(1981)."

*Id.* at 384.

Because the check itself is the contract, it embodies the full agreement between the parties, as manifested by the drawer's signature on the check; in signing the check, the drawer contractually obligates himself to pay the amount of the instrument to the payee. *See id.* at 385. A stop-payment order does not affect the drawer's liability to the payee of the check. *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 656 (Tex. 1990).

When the signature on a check is admitted, production of the check entitles the payee to recover on it unless the defendant establishes a defense. *See RR Maloan Inv., Inc. v. New HGE, Inc.*, 428 S.W.3d 355, 360 (Tex. App. – Houston [14th Dist.] 2014, no pet.). Defendant admitted signing and delivering the check to Plaintiff. *See* Dkt. No. 69 at 38-40.

Plaintiff states that Defendant has alleged that the check is not supported by consideration but does not direct the Court to where in the record that allegation was made. *See* Dkt. No. 68 at 16. Plaintiff also argues that Defendant is estopped from asserting a defense.

Estoppel arises where, by the fault of another, a party has been induced to change his position for the worse. *See Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967). The summary judgment evidence shows that Plaintiff, in reliance on Defendant's promise, refrained from making a direct claim to the policy proceeds. As a result of Defendant's stopping payment on the check, Plaintiff

was in a worse position than if he had made a direct claim. Accordingly, the summary judgment evidence establishes that Defendant is estopped from asserting a lack-of-consideration defense.

But, even if Defendant were permitted to assert such a defense, the contract between Plaintiff and Defendant is supported by consideration. Plaintiff provided consideration by agreeing to forego his right to claim the insurance proceeds as David's spouse. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 606 (Tex. App. – San Antonio 1999, pet. denied)

Plaintiff also states that Defendant has alleged that he revoked his offer when he asked Plaintiff to tear up the check. Again, Plaintiff does not direct the Court to where in the record this allegation was made. Nevertheless, it was too late to revoke the contract after Plaintiff accepted Defendant's offer. Instead, Defendant repudiated and breached the contract by refusing to pay Plaintiff the insurance proceeds. *See Murray v. Crest Const., Inc.*, 900 S.W.2d 342, 344 (Tex. 1995) (holding that, once a contract is made, a failure or refusal to perform is a repudiation and breach); *CMA-CGM (America), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495, 519 (Tex. App. – Houston [1st Dist.] 2013, pet. denied) (defining "repudiation" as "a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance.").

The undersigned concludes that Plaintiff may enforce the check and that Defendant's dishonor of the check was a breach of both the contract created by the check and the verbal agreement. Accordingly, the undersigned recommends that summary

judgment be granted on the suit on the instrument and breach of contract claims.

II.   The Court should grant summary judgment on the money had and received/
      <u>unjust enrichment claim.</u>

Alternatively, Plaintiff asserts a claim for "money had and received/unjust enrichment." *See* Dkt. No. 55 at 9-10. Plaintiff argues that Defendant received funds that in equity and good conscience belong to him because Plaintiff was both the beneficiary under the insurance policy and, in the absence of a beneficiary designation form, by his status as David's common law spouse.

To maintain an action for money had and received, Plaintiff must establish that Defendant held money which in equity and good conscience belonged to Plaintiff. *See Bank of Saipan v. CNG Fin. Corp.,* 380 F.3d 836, 840 (5th Cir. 2004).

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Id.* (quoting *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687-99 (1951) (quoting 58 C.J.S., Money Received § 4a, and *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402003 (1934)). Money had an received is an equitable doctrine applied to prevent unjust enrichment. *See id.*

The undisputed summary judgment evidence establishes that Plaintiff was the sole named beneficiary under David's insurance policy. *See* Dkt. No. 69 at 26. Thus,

-14-

Plaintiff had a superior right to the insurance proceeds under contract law.

Plaintiff also claims that, as David's common law spouse, he is entitled to the insurance proceeds as David's nearest relative. *See* TEX. INS. CODE § 1103.152(b) (providing that when no contingent beneficiary has been designated, as is the case here, Texas law requires the proceeds to be paid to the decedent's nearest relative). The term "nearest relative" is not defined in the statute but has been defined by the courts as "'a person connected with another by blood or affinity; a person who is kin with another.'" *Primerica Life Ins. Co. v. Baccus*, No. 3:07-cv-264-O, 2009 WL 250027, at * (N.D. Tex. Jan. 30, 2009) (quoting *Clifton v. Anthony*, 401 F. Supp. 2d 686, 689 (E.D. Tex. 2005) (citing BLACK'S LAW DICTIONARY 1314 (8th ed. 2004)).

Texas law provides that, to establish the existence of a common-law marriage, one must proffer evidence that the couple "agreed to be married and after the agreement they lived together in this state" and "represented to others that they were married." TEX. FAM. CODE § 2.401(a)(2). The United States Supreme Court has determined that same-sex couples have the right to marry and the right to have lawful same-sex marriages recognized. *See Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584, 2604-05 (2015). And courts have held that the *Obergefell* holding applies retroactively. *See Ranolls v. Dewling*, 223 F. Supp. 3d 613, 624 (E.D. Tex. 2016).

The undisputed summary judgment evidence establishes that Plaintiff was David's common law spouse. Plaintiff and David lived together for 24 years, from February 13, 1993 through the date of David's death on October 23, 2016. They held

themselves out as a married couple, lived together in the State of Texas, and represented to others that they were married. February 13, 1993 was their anniversary date, and they celebrated that date every year until David's death. *See* Dkt. No. 69 at 4. As David's common law spouse, Plaintiff has a superior right to the insurance proceeds as David's heir and nearest relative.

Accordingly, the Court should determine that, in equity, justice, and law, the insurance proceeds belong to Plaintiff and grant summary judgment on the money had and received claim.

III.    Damages

A.    The Court should impose a constructive trust.

Plaintiff alleges that

[a]fter receiving the proceeds, Defendant Norman Freemen embarked upon a campaign to hide and secret the money with the aid and advice of his brother-in-law. Upon information and belief, Defendant Norman Freemen used the proceeds to pay off, and obtain fee simple title, to the house in which he lives, and to pay other debts and obligations of his former and current spouses.

Dkt. No. 55 at 12. During discovery, Defendant admitted that he used $330,000 of the insurance proceeds to buy the house. *See* Dkt. No. 69 at 43-44. Plaintiff seeks a constructive trust on property that can be traced to the policy proceeds, and, specifically, on Defendant's house located at 1601 Wickersham, Huntsville, Texas.

A constructive trust is a remedy for unjust enrichment. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). It is broad and flexible in nature, and the equity of the transaction will determine the relief granted. *See id.* It is an appropriate

-16-

remedy when one party holds funds that in equity and good conscience belong to another. *See id.*

The undisputed summary judgment evidence shows that Defendant has used insurance funds, which rightfully belong to Plaintiff, to pay off his house. Accordingly, the undersigned recommends that the Court impose a constructive trust on Defendant's house located at 1601 Wickersham, Huntsville, Texas, and on any other property that can be traced to the policy proceeds.

B.    The Court should defer ruling on the request for attorneys' fees.

Plaintiff is entitled to attorneys' fees on his breach of contract claim, but the undersigned cannot evaluate the reasonableness of those fees on the record as it now stands. Accordingly, the undersigned recommends that the Court defer ruling on the request for attorneys' fees and allow Plaintiff to supplement his summary judgment motion and evidence to provide more information concerning attorneys' fees. *See Pizza Inn Inc. v. Clairday*, No. 3:18-cv-221-N, 2019 WL 5739296, at *3 (N.D. Tex. Nov. 4, 2019) (laying out the standards for recovery of attorneys' fees on a Texas state law breach of contract claim).

Plaintiff's request for attorneys' fees is supported by the Affidavit of Tom C. Clark, which incorporates his firm's records. *See* Dkt. No. 69 at 116-68. Although Mr. Clark states that he is familiar with the lodestar method, he fails to state the total number of hours he and his paralegal worked in providing legal services relating to Plaintiff's claims against Defendant. Mr. Clark states his credentials, the hourly rates for both himself and his paralegal, and explains how he segregated the fees for work

done on the claims for which fees are recoverable and those on which they are not, and for services rendered for claims against Defendant from those claims against Prudential and Bank of America. He does state the number of hours worked prior to removal of this case, all of which he attributes to claims against Defendant. But he does not state the number of hours worked after removal.

Because it is Plaintiff's burden to establish the number of hours worked on claims against Defendant, and because it is not the Court's burden to ferret through the invoices to attempt to make that determination, the undersigned recommends that the Court defer ruling on the request for attorneys' fees and provide Plaintiff the opportunity to supplement his motion for summary judgment and summary judgment evidence concerning attorney's fees.

### Recommendation

Plaintiff's Motion for Summary Judgment Against Defendant Otis Norman Freemen [Dkt. No. 65] should be granted in part. The Court should grant summary judgment on the breach of contract and money had and received claims and impose a constructive trust on Defendant's house and any property that can be traced to the insurance proceeds. The Court should defer ruling on Plaintiff's request for attorneys' fees and provide Plaintiff the opportunity to supplement his motion for summary judgment and summary judgment evidence concerning attorneys' fees.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 16, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE